JOHN SHEARON, appellee, v. RAY ANDERSON, appellant.

No. 49949.

(Reported in 103 N.W.2d 766)

June 14, 1960.

Tolbert C. Moore and Harold W. Bracewell, both of Des Moines, for appellant.

Connolly, O'Malley & McNutt, of Des Moines, for appellee.

Thompson, J.—Plaintiff's petition alleged that on March 2, 1956, the defendant made, executed and delivered to him a promissory note in the sum of $2240, with interest, bearing the above date and payable at the rate of $100 per month; that no payments had been made and the entire amount of the note was then due and payable. The defendant admitted the signing and delivery of the note, but pleaded affirmatively that the delivery was conditioned upon the plaintiff delivering to the defendant an assignment of a note and chattel mortgage executed to the plaintiff by the Weather Insulating Window and Door Company, that such note and mortgage had not been delivered to the defendant and so the consideration for the note of defendant held by plaintiff failed. Refusal to pay the note is admitted. By way of reply, the plaintiff denied that he had agreed to deliver the Weather Insulating Company note and mortgage, or that they formed any condition for the execution and delivery of defendant's note, but alleged that the considera-

tion was that the defendant in operating the Weather Insulating Company, hereinafter referred to as the company, was permitted to use materials covered by the mortgage in the manufacture of windows and doors. The case was tried to a jury, which returned its verdict for the plaintiff as prayed. From judgment on the verdict the defendant appeals.

■■ I. Although the defendant assigns two errors relied upon for reversal, in effect each raises the same question of improper cross-examination. The first error alleges plaintiff's counsel was permitted to cross-examine the defendant, who was the only witness on his own behalf, upon matters not testified to on direct examination. The second error is predicated upon the admission of two written contracts between the defendant and the company, which were disclosed by the alleged improper cross-examination. Both claimed errors will be considered together.

The only issue in the case was whether the execution and delivery of the note sued upon was conditional upon assignment and delivery of the company's note and mortgage to the defendant, or whether, as the plaintiff alleged in his reply, the consideration was that the company, operated at the time by the defendant, was permitted to use materials covered by the mortgage in making doors and windows for use in its business. The alleged improper cross-examination went into the relationship of the defendant to the company, and whether certain lumber sold to the company by the plaintiff was actually in the company's possession when the defendant took over the management. The record shows that the defendant testified in direct examination as to his position with the company: "Well, I was assisting them on finances is really about all my connection was." Also he said that any purchase of materials from the plaintiff was before his connection with the company.

It is true the matter of defendant's exact relation to the company had no strong probative tendency either to support or refute the issues as to the exact agreement at the time the note in suit was delivered. But it had some bearing. It could well be inferred that the closer the connection of the defendant with the company's affairs, the more interested he might be in

a release of the lien of the mortgage previously given to the plaintiff upon the materials at hand so that they could be used in the manufacture of windows and doors for the purpose of carrying on the business in which the company was engaged. The defendant had said on direct examination that about all he was doing was helping with the finances. We think the trial court properly permitted cross-examination on this point. The cross-examination brought out a considerably closer connection than a mere financing. Both Exhibits B and C, which were brought into the case by the cross-examination, were entered into by the defendant with the company before the date of the execution and delivery of the note. The exhibits are too long to be set out in full here; but as a summary, Exhibit B, dated September 13, 1955, may be interpreted as a financing contract by the terms of which the defendant agreed to furnish certain funds, or credit, for the company, and was given security therefor; while Exhibit C, under date of January 24, 1956, entitled "Contract of Employment", made the defendant the manager of the company's business and defined his powers, rights and duties.

When the defendant testified on direct examination that his connection with the company was nothing more than financing, he opened the door to cross-examination on the same subject. While, as we have said, the matter was not of controlling importance, it was nevertheless a subject which the defendant had thought of sufficient materiality to call for testimony on direct examination, and we cannot say the trial court was in error in permitting the plaintiff to go further into it on cross-examination.

It is well settled that the trial court has a considerable discretion in its rulings on the admissibility of evidence on cross-examination. State v. Sampson, 248 Iowa 458, 461, 79 N.W.2d 210, 212, and citations; Colburn v. Krabill, 232 Iowa 290, 293, 3 N.W.2d 154, 156, and cases cited. No abuse of discretion appears here. So with the matter of the material furnished by the plaintiff to the company. While the defendant testified any materials purchased from the plaintiff were bought before his connection with the company, he does not deny, but

in effect concedes, that a considerable quantity of lumber had been bought and was unpaid for at the time his relationship began. It appears without dispute that the note in suit represented the unpaid amount due from the company to the plaintiff for supplies furnished.

II. Another point is also material here. Section 619.16, Code of 1958, says: "Immaterial errors disregarded. The court, in every stage of an action, must disregard any error or defect in the proceeding which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." The statute does no more than enunciate the general rule, which is stated in 3 Am. Jur., Appeal and Error, section 1003, pages 555 to 558 inclusive: "It is a fundamental rule of modern appellate procedure that in order to warrant a reversal, the error complained of must have been prejudicial to the substantial rights of the appellant * * *. Error going only to immaterial, minor, or technical questions is not ground for reversal, especially where it does not touch the controlling questions * * *."

We applied the rule in Colburn v. Krabill, supra, page 294 of 232 Iowa, page 156 of 3 N.W.2d; in State v. Sampson, supra; and in State v. Thomas, 151 Iowa 572, 575, 132 N.W. 51, 52, from which we quote: "It must be shown, before error can be predicated upon such rulings, that they were arbitrary or unfair, and resulted in prejudice to defendant." We hold in the case at bar that the trial court did not abuse its discretion in permitting the cross-examination now complained of, and we find no prejudice to defendant even if error has been committed.

III. The defendant in argument asserts that error was committed in permitting the plaintiff to cross-examine on the question whether he had sold lumber belonging to the company and received money therefrom. While the relevancy of this line of questioning to the direct examination is somewhat more remote, we think it had a bearing on the relation of the defendant to the company and tended to contradict his statement that he was nothing more than a fiscal agent. No abuse of discretion appears.

We find no substantial error requiring a reversal.—Affirmed.

All JUSTICES concur except OLIVER, J., not sitting.